OPINION
{¶ 1} Plaintiff-appellant, Joseph Lawrie, appeals the decision of the Butler County Court of Common Pleas granting the summary judgment motion of defendants-appellees, CBS Personnel Services, LLC, Employee Management Services, Inc., and Advanced Digital Wireless, Inc. ("ADW"), and denying appellant's summary judgment motion. We affirm the common pleas court's decision.
 {¶ 2} Appellant began employment at ADW as a sales representative in November 2000. Appellant had been assigned to work at ADW by Employee Management Services, a division of CBS Personnel Services. ADW paid appellant through Employee Management Services though it considered appellant an employee. Appellant's duties at ADW included selling cellular phone service, cellular phones, and cellular phone accessories. Appellant also performed consulting services, advising businesses on cost-effective cellular service options.
 {¶ 3} It is undisputed that appellant was an at-will employee of ADW. However, appellant entered into two compensation agreements with ADW, one in May 2001 and one in July 2001. Those agreements set forth a base salary as well as a formula for determining the commission appellant earned on sales.
 {¶ 4} In June 2002, ADW presented appellant with a new compensation plan to sign. Appellant refused to sign the plan and was terminated. Following his termination, ADW did not pay appellant commissions from sales appellant made prior to his termination.
 {¶ 5} Appellant subsequently filed a complaint against ADW, Employee Management Services, and CBS Personnel Services in common pleas court. In appellant's complaint, he alleged that, pursuant to the July 2001 compensation agreement, he was entitled to the commissions from sales he made prior to his termination.
 {¶ 6} Appellant moved for summary judgment. ADW, Employee Management Services, and CBS Personnel Services also filed a summary judgment motion. The common pleas court granted their motion and denied appellant's motion. The court found that, pursuant to the July 2001 compensation agreement, ADW was not obligated to pay appellant commissions from pretermination sales. Appellant now appeals, assigning three errors.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO UPHOLD APPELLANT'S WRITTEN COMPENSATION AGREEMENT."
 {¶ 9} In this assignment of error, appellant argues that the common pleas court failed to uphold the July 2001 compensation agreement between appellant and ADW. Appellant argues that the language of the July 2001 agreement unambiguously gave him the right to be paid his commissions on sales made prior to his June 2002 termination.
 {¶ 10} Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. We review the granting of a summary judgment motion de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296.
 {¶ 11} The July 2001 compensation agreement was a contractual agreement. Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.Skivolocki v. E. Ohio Gas Co. (1974), 38 Ohio St.2d 244, 247. Where the terms of a contract are clear and unambiguous, a court cannot find a different intent from that expressed in the contract. E.S. PrestonAssoc., Inc. v. Preston (1986), 24 Ohio St.3d 7, 10. The interpretation of a contract that is clear and unambiguous is a question of law. Stateex rel. Parsons v. Fleming, 68 Ohio St.3d 509, 511, 1994-Ohio-172.
 {¶ 12} The July 2001 agreement contained the following clause: "Upon termination of employment, any commissions due to employee will be held for a period of 120 days (Nextel, Verizon MCI World Com sales are 180 day period)." Appellant argues that he was "due" the commissions from sales made prior to his termination and that, pursuant to the above clause, he was entitled to those commissions according to the time frame provided.
 {¶ 13} However, appellees cite the following clause, also contained in the July 2001 agreement: "Advanced Digital Wireless may unilaterally, with our [sic] without prior notice and either retroactively or prospectively, increase, decrease, adjust, or revise territories/modules, objectives, awards, non-compete policies, other incentive payments, or any other provisions affecting measurement or compensation of Advanced Digital Wireless sales incentive-paid individuals." Another clause stated as follows: "Advanced Digital Wireless reserves the right to amend, change, or cancel the sales compensation plan or any elements of the plan solely at its discretion."
 {¶ 14} We find that the above language cited by appellees unambiguously gave ADW the right to change its policy of paying terminated employees their commissions earned on sales made pretermination. The record shows that ADW exercised that right when it orally informed appellant of the policy change. Appellant stated in his deposition that ADW informed him of the policy change. The record shows that appellant was informed of the change in March or April of 2001, over a year before his termination in June 2002.
 {¶ 15} Accordingly, we find no error in the common pleas court's determination that, based on the unambiguous language of the July 2001 agreement and the undisputed facts in the record, appellant was not entitled to the commissions he sought. We overrule appellant's first assignment of error.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT LAWRIE FORFEITED HIS RIGHTS IN ALL FUTURE RESIDUAL COMMISSIONS."
 {¶ 18} In this assignment of error, appellant argues that the common pleas court's interpretation of the July 2001 agreement is contrary to Ohio case law. According to appellant, Ohio courts have established that contractual agreements resulting in the forfeiture of earned commissions are unenforceable. Accordingly, we must determine whether the unambiguous terms of the contract, which authorized ADW to change its policy with regard to paying commissions post-termination, are enforceable under Ohio law.
 {¶ 19} Appellant and appellees both cite cases that support their respective positions. The most significant case cited by appellant isHaines Co., Inc. v. Stewart (Feb. 5, 2001), Stark App. No. 2000CA00138, 2001 WL 166465. In Stewart, the court found unenforceable a provision in an employment contract stating that the employee would have no further rights to commissions after his termination. Id. at *2. The court found that the employee had earned the commissions at issue during the course of the contract, and that those commissions were due him, despite the contract language. Id. The court stated that "[c]ontracts which provide for forfeiture of earned commissions or bonuses are not generally enforced." Id., citing Finsterwald-Maiden v. AAA of S. Cent.Ohio (1996), 115 Ohio App.3d 442.
 {¶ 20} Appellant also cites McKelvey v. Spitzer Motor Ctr., Inc.
(1988), 46 Ohio App.3d 75, which found that an employee was entitled to a year-end bonus despite language in the bonus plan stating that in order to receive the bonus, the employee must be employed at the time of the employer's annual audit. The employee had performed the work necessary for the bonus during the year in question, but was terminated before the annual audit, which took place at the beginning of the following year. The court found that while the bonus plan was a contract and that its language denied the employee the bonus, the employee was nevertheless entitled to the bonus based on "equitable considerations." Id. at 77. In making its decision, McKelvey cited the principle that "forfeiture is not favored in the law." Id., citing 18 Ohio Jurisprudence 3d (1980) 62, Contracts, Section 169.
 {¶ 21} The most significant cases cited by appellees are Nichols v.Waterfield Financial Corp. (1989), 62 Ohio App.3d 717, and Ullmann v.May (1947), 147 Ohio St. 468. In Nichols, the court found enforceable a letter signed by an at-will employee indicating that he would not be entitled to commissions upon his termination. Nichols at 719. Pursuant to that letter, the court held that the employee was not entitled to commissions from sales made after the letter. Id. In Ullmann, the Ohio Supreme Court found enforceable contract language stating that an employee was only entitled to commissions while the contract was "in full force and effect." Under the contract, the employee was entitled to commissions once the customer procured by the employee paid the employer for the employer's services. The court held that the employee was not entitled to commissions from sales to customers procured by the employee during the contract, who paid the employer for services rendered after the employee's termination and the expiration of the contract. Ullmann at 477-479. The court found that, absent fraud or bad faith, it was required to enforce the contract entered into by competent parties. Id.
 {¶ 22} After reviewing the record, we find that the unambiguous contract language contained in the July 2001 agreement is enforceable. We find the Nichols and Ullmann line of cases convincing and applicable to the facts of this case. We do not find equitable considerations weighing against enforcing the contract, nor do we find the presence of fraud or bad faith. The record shows that appellant was aware of ADW's change in policy with respect to post-termination commissions, and continued to work at ADW for over a year after being informed of the change. The record also shows that appellant had been aware of other changes to policies stated in the July 2001 agreement, and continued to work at ADW under the new polices. Appellant acknowledged that ADW changed its previous policy under the July 2001 agreement of paying commissions monthly, and began "residualizing" commissions, paying commissions to its employees over a longer period of time. Appellant stated in his deposition that he had "no problem" with that change at the time.
 {¶ 23} Under the July 2001 agreement, ADW could unilaterally modify the terms of appellant's compensation, and it did so in at least two instances. The undisputed facts show that appellant was aware of the contract language and the changes in ADW's commission policies made pursuant to that language. Due to the unambiguous contract language and the lack of equitable considerations weighing against enforcing the contract, we overrule appellant's second assignment of error.[1]
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "THE LOWER COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT LAWRIE WAS NOT ENTITLED TO RESIDUAL COMMISSION PAYMENTS AT THE RATES AS SPECIFIED IN APPELLANT'S COMPENSATION AGREEMENT."
 {¶ 26} In this assignment of error, appellant argues that, pursuant to the July 2001 compensation agreement, he was entitled to 35 percent commission for sales made under the Coca-Cola account. According to appellant, appellees "invented" a policy under which appellant earned 20 percent commission on certain "gimme" accounts.
 {¶ 27} After reviewing the record, we disagree with appellant's argument. The record does not show that appellees "invented" the "gimme" account concept. Appellant acknowledged in his deposition testimony that he handwrote on the July 2001 agreement the words: "20% Top Payout on Gimmes." Appellant also acknowledged that a previous sales representative had been assigned to the Coca-Cola account, and that some work had been performed with respect to the account. Two of appellant's supervisors testified in their depositions that the Coca-Cola account was a "gimme" account because the work in procuring the account had already been accomplished prior to appellant's arrival as an employee. As previously discussed, the July 2001 agreement allowed ADW to unilaterally determine the terms of appellant's compensation. Given the language of the July 2001 agreement and the undisputed facts in the record, we find no error in the common pleas court's determination that the Coca-Cola account was a "gimme" account for which appellant was entitled to 20 percent commission. Appellant's third assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Walsh and Young, JJ., concur.
[1] R.C. 1335.11(C), which requires the payment of commissions due pursuant to a contract upon the termination of that contract, is inapplicable to this case. Pursuant to unambiguous contract language, ADW exercised its option to change appellant's compensation terms and not pay him commissions post-termination. Because ADW was not required to pay appellant post-termination commissions pursuant to the terms of the contract and the undisputed facts in the record, the statute does not apply.